JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant John Russell appeals from his conviction and sentence for eight counts of gross sexual imposition. He contends that (1) the indictment did not provide him with fair notice of the charges; (2) the court erred by denying his motion for a more specific bill of particulars than the state provided; (3) the court erred by denying his request for grand jury transcripts; (4) the evidence was insufficient to convict him of separate acts of gross sexual imposition; (5) the sentencing statute requiring the court to consider whether the defendant showed remorse for his crimes is unconstitutional; and (6) cumulative errors deprived him of a fair trial.
 Procedural History {¶ 2} Appellant was charged in a 57 count indictment filed November 10, 2004 with 23 counts of rape, 27 counts of gross sexual imposition, and 7 counts of kidnapping. All of the charges carried sexually violent predator specifications; the kidnapping charges also carried sexual motivation specifications. Each of the first 47 charges was alleged to have occurred within various one year periods. Counts 1-4 allegedly occurred between November 1997 and November 1998; counts 5-7, between November 1998 and November 1999; counts 8-13, between November 1999 and November 2000; Counts 14-18, between November 2000 and November 2001; Counts 19-29, between November 2001 and November 2002; and counts 30-47 *Page 4 
between November 2002 and November 2003. Counts 48-57 allegedly occurred between November 2003 and August 2004.
 {¶ 3} Appellant requested and received a bill of particulars, which was filed on December 13, 2004. More than a year later, on January 24, 2006, appellant moved the court for a more specific bill of particulars. The court heard oral argument regarding this issue immediately before trial and orally denied the motion. Appellant also filed a motion for production of the transcripts of the grand jury proceedings which the court orally denied before trial.
 {¶ 4} Appellant waived his right to a jury trial and proceeded to trial before the court. At trial, the state presented extensive testimony from the victim, appellant's daughter; the victim's therapist, Maureen Riley-Behringer; nurse-practitioner McAliley, who examined the victim; the victim's mother, Brenda Lamparyk, detective Larry R. Kirkwood, and social worker Jamessa Motley.
 {¶ 5} The victim, appellant's daughter, was born November 2, 1991. She testified that her parents were divorced when she was two or three years old. Both parents had since remarried. She had regular visitation with appellant, twice per week, from the time she was in kindergarten. During visitation, she and her father usually went to appellant's parents' home in Lakewood, although appellant did not live there.
 {¶ 6} The victim recalled that appellant took her upstairs to her "Aunt Becky's room" to play a game called "Doctor." She said he made her touch him and he *Page 5 
touched her. The first time he did this, she was "pretty small" and "had kind of hair like shoulder length." He told her to stand up, then pulled down her pants and touched her "private part" with his hand through her underwear. She said she was "scared, confused" by this. He then took her hand and put it down his pants and showed her how to rub his "private part." He took her hand away, pulled up his pants, and left the room. The victim said this occurred "four or five times" when she was in kindergarten.
 {¶ 7} These incidents occurred another six or seven times when she was in the first grade, or seven years old. She testified that one of them would remove her underwear and he would rub her with his hand. He also had her rub his penis. The victim said appellant was sometimes nice, and sometimes mean, telling her that he would hurt or kill the victim's mother if the victim ever told anyone what they were doing.
 {¶ 8} When the victim was seven or eight years old, appellant began to make her have sexual intercourse with him. She recalled one such incident, but it was not the first time. She did not remember any of the details of that day except that this incident occurred in the afternoon. She said they touched each other then appellant pushed her onto the bed and "stuck his penis into my private part, and I just remember it hurt really bad." She said "ow" and "stop", but appellant told her to shut up, and said he would hurt her mother if she told anyone. *Page 6 
 {¶ 9} When the victim was in the second or third grade, appellant took her to the "Around the Corner" bar, where he worked. She recalled that she went down into the basement, where the office was, and that she had a migraine headache and passed out. When she awoke, she "was just really sore down there."
 {¶ 10} The incidents of sexual touching and sexual intercourse occurred with increasing frequency each year as she got older. The victim recalled one incident which occurred in a blue room in the attic at her grandparents' house when she was seven or eight years old and her grandparents' friends, the Blisses, were visiting. In addition to rubbing one another's private part, appellant began to have sexual intercourse with her but stopped when they were called by the others downstairs. She also recalled another incident of touching on Christmas day when she was eight or nine years old. She said he took her upstairs to her Aunt Becky's room and rubbed her private part through her underwear and stuck his finger in her vagina.
 {¶ 11} The victim said the incidents of touching and/or intercourse occurred two or three times a month during visitation. On one occasion, he tried to force his penis into her mouth, but she bit him. He yelled at her and punched the bed, but never tried to do it again. She also recalled another incident which occurred in the greenhouse at her grandparent's house when she was 9 or 10 years old. Appellant touched her private part and made her touch him. He began to have intercourse with her, but someone pulled into the driveway and they stopped. He also touched her and forced her to have intercourse with him after she returned from camp during *Page 7 
the summer before she entered the seventh grade. She recalled a further incident when she was nine or ten when appellant took her to the recreation room above his parents' garage. Appellant had her sit on a table and "[h]e rubbed me and then he stuck his thing up inside of me and moved it around."
 {¶ 12} The victim eventually told a friend that her father sometimes touched her. Shortly thereafter, the victim's mother asked her if someone had touched her. She said yes, "two random people" whom she did not identify. She said she did so because she was afraid appellant would hurt her half-brother. She later told her mother that it was her grandfather, then later told her it was her father.
 {¶ 13} At the close of the state's case, the state dismissed the first count, a rape charge, and dismissed all of the sexually violent predator specifications. Pursuant to appellant's Rule 29 motion for acquittal, the court dismissed 16 of the rape charges (counts 9, 15, 20, 21, 26, 27,28, 29, 30, 31, 32, 33, 34, 35, 48, and 49), 13 of the gross sexual imposition charges (counts 12, 24, 36, 37, 38, 40, 41, 42, 43, 44, 45, and 46), and 3 of the kidnapping charges (counts 4, 25, and 47). The court later clarified that of the remaining counts, counts 2 and 3 related to incidents occurring when the victim was in kindergarten, counts 5, 6, and 7 related to the time when the victim was in the first grade; counts 8, 10, 11 and 13 related to when the victim was in the second grade; counts 14, 16, 17 and 18 related to when the victim was in third grade, which the court associated with the Christmas incident; counts 19, 22 and 23 related to the period when the victim was in the fourth grade; count 39 *Page 8 
related to an incident when the victim was in the fifth grade; counts 51, 52, 53 and 57 related to the greenhouse incident; and counts 50, 54 and 55 related to the incident after she returned from camp.
 {¶ 14} At the conclusion of all of the evidence, the court found appellant guilty of gross sexual imposition as charged in counts 2, 3, 6, 22, 23, 39, 54 and 55. For sentencing purposes, the court merged counts 2 and 3, 22 and 23, and 54 and 55, and sentenced him to one year imprisonment on each of the merged charges and one year on each of counts 6 and 39, to be served consecutively, for a total of five years' imprisonment, followed by five years' post-release control.
 Law and Analysis {¶ 15} In his first assignment of error, appellant urges that the indictment did not sufficiently inform him of the charges against him so as to allow him to prepare a defense. The fourth assignment raises a related issue, asserting that the court erred by denying appellant a more specific bill of particulars. Because these assignments of error both address the specificity of the charges, we address them together.
 {¶ 16} In general, an indictment is constitutionally adequate if it first "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States (1974),418 U.S. 87, 117, 41 L. Ed.2d 590, 94 S. Ct. 2887. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as *Page 9 
long as `those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'"Hamling, 418 U.S. at 117(quoting United States v. Carll, 105 U.S. 611,612 (1882).
 {¶ 17} "Individual offenses must be established with some degree of distinction." State v. Hemphill, Cuyahoga App. No. 85431,2005-Ohio-3726, 4|56. This detail need not be established in the indictment itself, nor need it be established by reference to a specific date and time. A bill of particulars or even discovery may provide the necessary detail to connect each charge to a specific incident and provide the defendant with adequate notice of the crimes charged.Valentine v. Konteh (6th Cir. 2005), 395 F.3d 626.
 {¶ 18} Appellant's counsel himself conceded during the oral argument before the trial court that the state had "done the best that they could." Because the victim was a child, the available details of each offense were limited. The state had supplied appellant with such information as it had through discovery. The time ranges included in the indictment for each offense allowed the court to associate particular charges with particular incidents to which the victim testified at trial. Therefore, the indictment was not insufficient nor did the trial court err by denying appellant's motion for a more specific bill of particulars. We overrule the first and fourth assignments of error. *Page 10 
 {¶ 19} To the extent that some of the charges contained in the indictment could not be associated with particular incidents, a close analysis of the indictment and the discovery could have disclosed these errant charges and allowed them to be dismissed early in the case. The practice of "padding" an indictment with extra charges in case additional criminal activity comes to light during discovery or trial is contrary to due process. However, in this case, these charges were ultimately dismissed, so appellant was not prejudiced by them.
 {¶ 20} Appellant's second assignment of error asserts that the evidence was insufficient to support his convictions. Appellant was convicted of eight charges of gross sexual imposition, in violation of R.C. 2907.05. R.C. 2907.05 provides in pertinent part: "(A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies: * * * (4) the other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" is statutorily defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 21} The victim in this case described one incident of touching when she was in kindergarten; she specifically recalled that he touched her genitals and guided her hand to touch his genitals. This evidence was sufficient to support appellant's conviction of counts 2 and 3. SeeState v. Stewart (1996), 111 Ohio App.3d 525, *Page 11 
534-35 (having child touch defendant's erogenous zone was sufficient to support gross sexual imposition conviction). The victim also testified that when she was seven or eight years old, appellant touched her and made her touch him, then pushed her onto the bed and "stuck his penis into my private part," amply supporting his conviction of count 6. Appellant's conviction of counts 22 and 23 are supported by the victim's testimony about the incident in which appellant touched her then put his penis in her mouth. The victim's testimony that appellant touched her and forced her to have sexual intercourse with him after she returned from summer camp supports appellant's conviction of count 39. Finally, the victim's testimony that appellant touched her and made her touch him in the greenhouse, inserted his finger in her vagina then began to have sexual intercourse with her was sufficient to support appellant's conviction of counts 52 and 53.[1]
 {¶ 22} Appellant contends that "[t]he court's acquittal on the Rape and Kidnapping charges is inconsistent with the guilty findings on the gross sexual imposition counts" because, if the court found the victim credible, then it should have found appellant vaginally raped her. In evaluating the sufficiency of the evidence to support the charges of which appellant was convicted, however, we will not speculate about the sufficiency of the evidence with respect to other charges of *Page 12 
which appellant was not convicted. We cannot properly infer that, because appellant was not convicted of the rape and kidnapping charges, he also should not have been convicted of gross sexual imposition. The second assignment of error is overruled.
 {¶ 23} Appellant next contends R.C. 2929.12(D)(5) requires the court to consider appellant's lack of remorse in sentencing him, and this requirement violates the defendant's right against self-incrimination and effectively punishes him for exercising his right to trial. Whether the offender shows genuine remorse is one of several factors the court may consider in assessing whether the offender is likely to commit a future crime. R.C. 2929.12(D)(5) and (E)(5). There is no indication in the record that the court considered the fact that appellant exercised his right to trial to demonstrate lack of remorse, or that the court considered that his failure to testify at trial demonstrated a lack of remorse. Rather, the appellant told the court at sentencing that "I must maintain my innocence. I have never inappropriately touched [my daughter] in any way * * *." In sentencing appellant, the court stated, "you sit there indicating to me that you're innocent and I will use that as a factor of showing no remorse or showing no * * * acceptance of responsibility." Therefore, we overrule the third assignment of error.
 {¶ 24} Appellant's fifth assignment of error claims the court erred by failing to provide him with the transcripts of the grand jury proceedings. Testimony before the grand jury is secret and may only be disclosed by order of the trial court upon a showing of a particularized need for it. State v. Greer (1981), 66 Ohio St.2d 139. In *Page 13 
this case, appellant argues that disclosure of the transcripts of the grand jury proceedings is necessary to determine whether the grand jury was informed about the multiple statements made by the victim. This argument begs the question: Why does appellant need to know whether this information was supplied to the grand jury? Appellant cannot challenge the sufficiency of the evidence presented to the grand jury. Cf.State v. Jeffries (March 22, 2001), Cuyahoga App. No. 76880, at 7;State v. McNamee (1984), 17 Ohio App.3d 175, 176 (there is no pretrial procedure for challenging the sufficiency of the evidence). Therefore, we overrule the fifth assignment of error.
 {¶ 25} Finally, appellant argues that "[t]he errors raised in this case must be viewed together and not in isolation." Appellant has not demonstrated that any error occurred in the proceedings before the trial court. Therefore, this argument is baseless. We overrule the sixth assignment of error.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 14 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and MARY J. BOYLE, J., CONCUR
[1] The victim testified about several other instances of touching, which the trial court also could have relied upon to support appellant's convictions. The court did not make factual findings, so we cannot say what evidence it actually relied upon. *Page 1