[Cite as *State v. Black*, 2013-Ohio-2105.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 12CA3327 |
| v. | : | |
| | | <u>DECISION AND</u> |
| GEORGE J. BLACK, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellant. | : | RELEASED 05/22/2013 |

<u>APPEARANCES:</u>

George A. Katchmer, Bloomingburg, Ohio, for Defendant-Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, Chillicothe, Ohio, for Plaintiff-Appellee.

Hoover, J.

I

INTRODUCTION

{¶ 1} Appellant, George J. Black, raises seven assignments of error pertaining to his conviction and sentence in the Ross County Common Pleas Court on charges of Involuntary Manslaughter, Felonious Assault, and Failure to Stop After a Non-Public Road Accident. The assignments of error allege misconduct and improprieties from virtually every stage of trial: from the voir dire examination through sentencing. After a review of the trial record and transcripts, we find that the appellant was afforded a fair trial, however, the Judgment Entry of Sentence is lacking the requisite findings. This makes appellant's sentence clearly and convincingly contrary to law;

therefore, appellant's fifth assignment of error has merit. Accordingly, we affirm the jury's

verdict; but reverse the trial court's Judgment Entry of Sentence and remand the cause for

proceedings consistent with this decision.

{¶ 2} Appellant raises the following seven assignments of error for review.

First Assignment of Error:

> THE COURT ERRED IN PERMITTING IMPROPER QUESTIONING
> DURING VOIR DIRE.

Second Assignment of Error:

> APPELLANT'S CONVICTION MUST BE REVERSED DUE TO
> PROSECUTORIAL MISCONDUCT DURING VOIR DIRE.

Third Assignment of Error:

> THE APPELLLANT WAS DENIED A FAIR TRIAL DUE TO THE
> INEFFECTIVENESS OF COUNSEL.

Fourth Assignment of Error:

> THE TRIAL COURT ERRED IN FAILING TO GIVE AN INSTRUCTION ON
> SELF DEFENSE.

Fifth Assignment of Error:

> THE TRIAL COURT SENTENCED THE APPELLANT TO CONSECUTIVE
> TERMS BASED UPON UNDUE CONSIDERATION OF ONLY ONE
> SENTENCING FACTOR.

Sixth Assignment of Error:

> THE TRIAL COURT SENTENCED THE APPELLANT TO CONSECUTIVE
> TERMS BASED UPON IMPROPER AND UNCONSTITUTIONAL CRITERIA.

Seventh Assignment of Error:

> CUMULATIVE ERRORS DEPRIVED THE APPELLANT OF A FAIR TRIAL.

II

FACTS

{¶ 3}  Appellant Black was indicted by the Ross County grand jury for one count of Involuntary Manslaughter, in violation of R.C. 2903.04; one count of Felonious Assault, in violation of R.C. 2903.11; and one count of Failure to Stop After a Non-Public Road Accident, in violation of R.C. 4549.021.  After a two-day jury trial, appellant was found guilty of all counts.

{¶ 4}  By Judgment Entry of Sentence, the trial court found that the offenses of Involuntary Manslaughter and Felonious Assault were crimes of similar import, and thus should be merged for sentencing purposes.  The trial court sentenced appellant to nine years in prison for Involuntary Manslaughter, and three years in prison for Failure to Stop After a Non-Public Road Accident.  The sentences for imprisonment were ordered to run consecutive to each other, for a cumulative sentence of twelve years.

{¶ 5}  Appellant's conviction and sentence arise from the tragic events that occurred in the early morning hours of January 13, 2011, at the Valley Bar in Bainbridge, Ohio.

{¶ 6}  On the night of January 12, 2011, appellant and his acquaintance Tim Keaton arrived at the Valley Bar.  Also present among the patrons of the Valley Bar that evening was Bob Nibert.  Mr. Nibert was accompanied by his friend Billy Self, his cousin Amanda McElwee, and her friend Jennifer.[1]

{¶ 7}  During the course of the evening, appellant struck up a conversation with Jennifer, bought her a drink, and asked her out on a date.

---

[1] Jennifer's surname is not discernible from the record.

{¶ 8}  In the early morning hours of January 13, 2011, the bartender, Melissa Cox, announced last call indicating that the bar was closing.  At that time, appellant and Mr. Keaton exited the bar and retired to appellant's Chevrolet Silverado truck.  Meanwhile, Mr. Nibert and Mr. Self stayed inside the bar and assisted bartender Cox with her closing duties.  Instead of leaving the premises, however, appellant asked Mr. Keaton if he would go back into the bar to summons Jennifer, so that appellant could give her his telephone number.

{¶ 9}  From here, the parties' versions of the facts differ.

{¶ 10}  According to the state's witnesses, after being summoned by Mr. Keaton, Jennifer went outside with him to the parking lot where appellant's truck was parked.  A short time later, Mr. Self walked out to the parking lot to start his car and observed appellant talking to Jennifer as she stood beside his truck.[2]  When Mr. Self was returning to the bar, Jennifer asked him if he would escort her back into the bar.

{¶ 11}  As Mr. Self escorted Jennifer back to the bar, an argument ensued between Mr. Self and Mr. Keaton.  Mr. Keaton then jumped out of appellant's truck, came after Mr. Self, and stabbed him in the abdomen with a screwdriver.  Mr. Self was able to fight back and subdue Mr. Keaton eventually forcing Mr. Keaton back into the passenger seat of appellant's truck.  Meanwhile, during the commotion of the fight, bartender Cox, Mr. Nibert, and possibly others came out to intervene.

{¶ 12}   As the individuals returned to the bar to tend to Mr. Self's wound, Mr. Nibert stayed outside, apparently telling appellant and Mr. Keaton that they needed to leave the premises. Appellant then allegedly backed up his truck several feet, turned his truck toward Mr. Nibert,

---

[2] Appellant remained inside the front, driver's side of the vehicle.

accelerated quickly, and intentionally struck Mr. Nibert. The force of the impact severed Mr. Nibert's leg as appellant's truck crashed through a metal guardrail, wooden privacy fence, and into the bar's outdoor beer garden.

{¶ 13} After striking Mr. Nibert, appellant backed his truck up and left the Valley Bar. Appellant was later apprehended by sheriff's deputies on State Route 41 in Pike County, Ohio.

{¶ 14} After spending nearly three months in the hospital and undergoing numerous surgical procedures, including the amputation of his right leg, Mr. Nibert died on March 28, 2011. The coroner's report lists "[c]omplications of blunt force injuries of lower leg" as the immediate cause of death.

{¶ 15} Appellant's version of the facts is significantly different than the prosecution's case.[3] According to appellant, when Mr. Keaton exited the bar (after having re-entered to summons Jennifer) he was being attacked by several individuals. Appellant testified that the individuals attempted to prevent Mr. Keaton from entering the truck and engaged in a tug-of-war with the truck door handle. Eventually, Mr. Keaton was able to enter the truck. The individuals allegedly threw a beer bottle into the truck during the struggle.

{¶ 16} Appellant further testified that he felt he was in danger, that the parking lot was a sheet of ice, and that he was merely trying to escape when he exited the parking lot. He said that en route to his home, he briefly exited the truck and noticed a small dent on the front fender; he immediately thought he may have hit the fence at the Valley Bar. He testified that he then returned to Bainbridge, but before reaching the bar, Mr. Keaton asked that he take him home. Appellant then returned Mr. Keaton to his residence and was allegedly on his way back to the bar

---

[3] Appellant was the lone witness to testify on behalf of the defense.

when he was stopped by the sheriff.  Appellant denies hitting Mr. Nibert, the metal guardrail, or

the wooden privacy fence.  He testified that when he was backing up to leave the Valley Bar he

did drive over what he thought to be a pile of snow, pushed aside from plowing the parking area.

III

LAW & ANALYSIS

A.  Voir Dire

{¶ 17}  For his first assignment of error, appellant contends that the trial court erred in permitting

improper questioning during voir dire.  Specifically, appellant takes issue with a line of

questioning in which the state asked potential jurors about their personal history with automobile

accidents.  Appellant argues that the questions were an attempt to "pre-try the case" and to

"indoctrinate the jury," thus violating his right to trial by a fair and impartial jury.

{¶ 18} Crim.R. 24(B) governs voir dire.  The rule states:

> Any person called as a prospective juror for the trial of any cause shall be
>
> examined under oath or upon affirmation as to the prospective juror's
>
> qualifications.  The court may permit the attorney for defendant, or the defendant
>
> if appearing *pro se*, and the attorney for the state to conduct the examination of
>
> the prospective jurors or may itself conduct the examination.  * * * .

{¶ 19}  "The control of voir dire is a matter of the court's discretion.  The manner of the

questioning and the form of the questions are matters subject to the judgment of the court in the

exercise of its sound discretion." (Citations omitted.)  *State v. Lechner*, 4th Dist. No. 724, 1990

WL 252981, * 1 (Dec. 21, 1990); *See also State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128,

767 N.E.2d 166, ¶ 40.  A trial court does not abuse its discretion unless it acts arbitrarily, unreasonably, or unconscionably.  *Lechner* at *1; *LaMar* at ¶ 40.

{¶ 20}  Initially, we note that trial counsel for appellant failed to object to the questions posed by the prosecutor.  Failure to object constitutes waiver of any challenges on appeal except for plain error.  *State v. Garvin*, 197 Ohio App.3d 453, 2011-Ohio-6617, 967 N.E.2d 1277, ¶51 (4th Dist.).  Thus, we review this assignment of error for plain error, rather than under an abuse of discretion standard.

{¶ 21}  Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights.  "Inherent in the rule are three limits placed on reviewing courts for correcting plain error."  *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 15.  " 'First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.'  We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' "  *Id.* at ¶ 16, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  We will notice plain error "only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error."  *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶ 22}  We find no plain error warranting reversal in this case.  During voir dire, a trial court should allow reasonable inquiry on any relevant matter which is determinative of the issues of the case.  *State v. Gaines*, 8th Dist. No. 91179, 2009-Ohio-622, ¶ 71; *State v. Atalla*, 157 Ohio

App.3d 698, 2004-Ohio-3414, 813 N.E.2d 84, ¶ 13 (9th Dist.); *Dayton v. Meyer*, 2nd Dist. No. 11848, 1991 WL 47533, *3 (Mar. 29, 1991).  Moreover, voir dire examination is an essential process which allows litigants to determine whether a venireman is prejudiced or biased against either litigant.  *Vega v. Evans*, 128 Ohio St. 535, 191 N.E. 757 (1934), paragraph one of the syllabus; *Krupp v. Poor*, 24 Ohio St.2d 123, 125, 265 N.E.2d 268 (1970); *Lloyd v. Willis*, 4th Dist. No. 03CA21, 2004-Ohio-427, ¶ 11.  In order to ensure such a result, counsel is afforded reasonable latitude on the voir dire examination.  *Krupp* at 126.

{¶ 23}   A potential juror's experience with an automobile collision or accident would obviously be relevant to the issues of the instant case.  Furthermore, the questions were aimed at determining whether a potential juror might be prejudiced or biased, either in favor of or against the state's case.  Finally, the form and scope of the questions at issue were done in good faith, not in a manner to create bias, prejudice, or an unfair attitude towards appellant.  Most importantly, the questions certainly did not change the outcome of appellant's trial.  Accordingly, appellant's first assignment of error is without merit.

B.  Prosecutorial Misconduct

{¶ 24}   In his second assignment of error, appellant argues that he was denied a fair trial because of two instances of prosecutorial misconduct.

{¶ 25}  "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced."  *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 36, citing *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45.  "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.' "  *Id*., quoting *State v. Givens*, 4th

Dist. No. 07CA19, 2008-Ohio-1202, ¶28, in turn quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995).  "Prosecutorial misconduct constitutes reversible error only in rare instances."  *State v. Edgington*, 4th Dist. No. 05CA2866, 2006-Ohio-3712, ¶ 18, citing S*tate v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993).  "The 'touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an 'error free, perfect trial.' ' "  (Alterations sic.)  *Leonard* at ¶ 36, quoting *Gest* at 257.

{¶ 26} Appellant argues that the state engaged in prosecutorial misconduct when (1) the prosecutor asked the veniremen "clearly prohibited questions" relating to their personal history of automobile collisions and accidents; and (2) when the prosecutor asked a question to a witness concerning the character of the deceased victim.  We will first consider the prosecutor's question pertaining to the character of the victim.  Then we will consider the prosecutor's questions during voir dire examination.

{¶ 27} During the state's case in chief, the prosecutor asked the witness "[w]hat kind of person" was Bob Nibert.  [Trial Tr. at 117.]  Appellant contends that the question was an attempt by the prosecutor to "bolster his case."

{¶ 28} Appellant's trial counsel immediately objected to the state's question.  The trial judge sustained the objection; but appellant argues that the jury had already heard the question and response of the witness.  [Trial Tr. at 117-118.]  The prosecutor did not attempt to ask the question again.

{¶ 29}  After the jury was sworn and affirmed, but before opening statements, the trial judge gave extensive instructions to the jury.  Included in those instructions was the directive that:

The lawyers present the evidence through the questioning of witnesses which must be done according to [the Ohio Rules of Evidence and the Ohio Rules of Criminal Procedure]. I enforce the rules and I determine the admissibility of the evidence. From time to time I may sustain an objection to certain evidence. You may be instructed at that time to disregard that evidence, and you must not draw any inference or speculate as to what the answer to a question might have been where the objection is sustained. [Trial Tr. at 51.]

After closing arguments, but prior to jury deliberations, the trial judge again instructed the jury as follows:

Questions and answers which have been stricken by the Court or which you were instructed to disregard aren't evidence and must be treated as though you never heard them. You must not speculate as to why the Court sustained an objection to any question, nor may you speculate as to what the answer to such a question might have been. You must not draw any inference or speculate on the truth of any suggestion included in a question that wasn't answered. [Trial Tr. at 286.]

{¶ 30} " 'A presumption always exists that the jury has followed the instructions given to it by the trial court.' " *State v. Murphy*, 4th Dist. No. 09CA3311, 2010-Ohio-5031, ¶ 81, quoting *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Based on the trial court's instructions, we cannot say that the prosecutor's question prejudiced appellant and denied him a fair trial. Moreover, it cannot be said that this single question, when viewed in the context of the entire trial, materially prejudiced or deprived the appellant of a fair

trial. Thus, appellant has not shown that the question at issue constituted prosecutorial misconduct that requires reversal.

{¶ 31} Next, we review the state's questions on voir dire. Specifically, appellant takes issue with the questions concerning the veniremens' history with automobile accidents. As mentioned above, because appellant did not raise an objection to these questions at trial, we review them for plain error. *Garvin*, 197 Ohio App.3d 453, 2011-Ohio-6617, 967 N.E.2d 1277, at ¶51; *see also State v. Keeley*, 4th Dist. No. 11CA5, 2012-Ohio-3564, ¶ 28. "Prosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments." *Keeley* at ¶ 28; citing *State v. Conley*, 4th Dist. No. 08CA784, 2009-Ohio-1848, ¶ 27.

{¶ 32} Again, we find that the form and manner of the questions did not create bias, prejudice, or an unfair attitude towards appellant; or otherwise lead to a biased panel of jurors. Put another way, we cannot say that appellant would not have been convicted in the absence of the prosecutor's questions concerning the veniremens' personal history of automobile collisions and accidents. As a result, the state's questions during voir dire do not amount to plain error.

{¶ 33} Accordingly, we overrule appellant's second assignment of error.

C. Ineffective Assistance of Counsel

{¶ 34} In his third assignment of error, appellant asserts that his trial counsel failed to provide effective assistance of counsel.

{¶ 35} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763

(1970), fn. 14; *State v. Stout*, 4th Dist. No. 07CA5, 2008-Ohio-1366, ¶ 21.  To establish

constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's

performance was deficient and (2) that the deficient performance prejudiced the defense and

deprived him of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984); *see also State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v.*

*Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).  "In order to show deficient performance,

the defendant must prove that counsel's performance fell below an objective level of reasonable

representation.  To show prejudice, the defendant must show a reasonable probability that, but

for counsel's errors, the result of the proceeding would have been different."  (Citations omitted.)

*State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95.  "Failure to

establish either element is fatal to the claim."  *State v. Jones*, 4th Dist. No. 06CA3116, 2008-

Ohio-968, ¶ 14.  Therefore, if one element is dispositive, a court need not analyze both.  *See*

*State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's

failure to satisfy one of the elements "negates a court's need to consider the other.").

{¶ 36}  Appellant claims that his trial counsel was ineffective because his counsel failed to

object to the state's questions during voir dire.  Appellant calls the questions "blatantly

improper" and argues that not only should objections been raised, but that his counsel should

have made a motion for a mistrial.

{¶ 37}  We have already determined in our analysis of appellant's first and second assignments

of error, however, that the state's questions during voir dire were not improper.[4]  Rather, the

questions were relevant to the issues of the case and were intended to determine whether the

---

[4] We reviewed appellant's first and second assignments of error, *supra*, for plain error.  Even if
we were to review under an abuse of discretion standard, we would still find that the voir dire
questions were not improper.

potential jurors could act fairly and impartially. Since the questions were not improper, the failure to object cannot constitute ineffective assistance of counsel. *See State v. Jackson*, 4th Dist. No. 11CA20, 2012-Ohio-6276, ¶ 34 (holding that since the alleged prosecutorial misconduct did not in fact occur, the failure to object cannot constitute ineffective assistance of counsel); *see also State v. Witherspoon*, 8th Dist. No. 94475, 2011-Ohio-704, ¶ 33 ("[T]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial."). Accordingly, appellant has not shown that his trial counsel's failure to object to the questions at voir dire constituted ineffective assistance of counsel that requires reversal.

{¶ 38} Appellant further claims that his trial counsel was ineffective because his counsel "failed to lay the proper foundation for questioning concerning the decedent's failure to take required blood thinning medications." [Brief of Appellant at 11.] Appellant's theory is that had his trial counsel laid a proper foundation, he could have potentially argued that Mr. Nibert's death was not caused by his actions, but from Mr. Nibert's failure to take necessary and required medication.

{¶ 39} Appellant's trial counsel, during opening statements, did in fact make the suggestion that Mr. Nibert failed to take prescribed blood thinning medication in the days leading up to his death. [Trial Tr. at 65.] Thereafter, not a single trial witness testified that either Mr. Nibert was required to take blood thinning medication, or that Mr. Nibert failed to take blood thinning medication. Appellant argues that his counsel should have pressed Dr. Bonita Ward, the deputy coroner who testified at trial, regarding decedent's alleged failure to take blood thinning medication. Dr. Ward, however, testified that whether or not decedent's blood contained blood thinning medication would be irrelevant to her diagnosis.

{¶ 40} In regard to the first prong – deficient performance – "[w]e are mindful that 'trial tactics or strategies are viewed with the presumption that effective legal counsel was rendered.' " *State v. Grube*, 4th Dist. No. 12CA7, 2013-Ohio-692, ¶63, quoting *State v. Roseborough*, 5th Dist. No. 04COA085, 2006-Ohio-2254, ¶ 144. Further, the Supreme Court of Ohio has recognized that if counsel decides, for strategic reasons, not to pursue every possible trial strategy, the defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). Here, it cannot be said that trial counsel was ignorant of the possible defense – the defense was alluded to in opening statements. Rather, trial counsel apparently determined that it was sound strategy to pursue different avenues on defense. An appellate court reviewing an ineffective assistance of counsel claim "must refrain from second-guessing the strategic decisions of trial counsel." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶ 41} Even if we were to assume, *arguendo*, that counsel's failure to pursue the defense amounted to deficient performance, we could not conclude that appellant was prejudiced and denied a fair trial. Appellant has failed to point to a single piece of record evidence concerning whether or not Mr. Nibert was prescribed blood thinning medication, or that Mr. Nibert failed to take blood thinning medication. Without such evidence, we may not presume that this was an intervening cause of Mr. Nibert's death. " 'Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.' " *Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, at ¶ 68, quoting *State v. Cromartie*, 9th Dist. No. 06CA0107-M, 2008-Ohio-273, ¶25. As such, appellant has failed to demonstrate that but for his counsel's alleged error, the results of the trial would have been different.

{¶ 42} Given all of the above considerations, we conclude that appellant's third assignment of error is without merit.

D. Failure to Instruct Jury on Self-Defense

{¶ 43}  For his fourth assignment of error, appellant asserts that the trial court erred in failing to give a self-defense instruction.

{¶ 44}  A trial court generally has broad discretion in deciding how to fashion jury instructions. *State v. Hamilton*, 4th Dist. No. 09CA3330, 2011-Ohio-2783, ¶ 69.  However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."  *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.  "Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' "  [Alteration sic.]  *Hamilton* at ¶ 69, quoting *Smith v. Redecker*, 4th Dist. No. 08CA33, 2010-Ohio-505, ¶ 51, in turn quoting *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993).

{¶ 45}  " 'In determining whether to give a requested jury instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction.' "  *Hamilton* at ¶ 70, quoting *Redecker* at ¶ 52; *see also Lessin* at 494.  Therefore, a trial court is vested with discretion "to determine whether the evidence is sufficient to require a jury instruction * * *."  *State v. Mitts*, 81 Ohio St.3d 223, 228, 690 N.E.2d 522 (1998); *see also State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989), paragraph two of the syllabus.  " 'If, however, the evidence does not warrant an instruction a trial court is not obligated to give the requested instruction.' "  *Hamilton* at ¶ 70, quoting *Redecker* at ¶ 52.  Thus, " 'we must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge.' "  *Id*.  "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies

that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 46} To establish a claim of self-defense, a defendant generally must show by a preponderance of the evidence that (1) he or she was not at fault in creating the situation giving rise to the event, (2) he or she had reasonable grounds to believe and an honest belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was by the use of force, and (3) he or she did not violate any duty to retreat or avoid the danger. *State v. Goff*, 4th Dist. No. 11CA20, 2013-Ohio-42, ¶ 17.

{¶ 47} The transcript reveals that at the conclusion of defense's case, the trial court discussed proposed jury instructions with the prosecutor and defense counsel. At that time, defense counsel moved for inclusion of a jury instruction on self-defense. [Trial Tr. at 257-258.] After hearing argument from the prosecutor and defense counsel on inclusion of a jury instruction on self-defense, the trial court refused to give an instruction noting that:

> There seems to be no evidence to indicate that this specific victim did anything to cause the defendant to believe that he was in danger of great bodily harm. In fact, the only identification of this defend, victim by the defendant is that they were having a brief but casual conversation involving no threats, no violence, no curse words, nothing like that. Also the Court finds that the evidence indicates that any use of force was the unreasonable use of force by using a truck to run over the victim. And also there's no evidence that the defendant at that time was in imminent danger of great bodily harm and death, because he was in a two thousand plus pound truck pulling out of the parking lot, or backing up into an

alley. By his own testimony, nobody was chasing the truck, nobody chased the truck into the alley, nobody chased the truck out of the parking lot. There's no evidence to indicate that. In fact, the defendant, inexplicably, testified that once Keaton got in and the door was shut, everything just went still. Nobody did anything except a beer bottle was thrown. So there's no indication that this defendant had any justification for a bona fide belief that he was in imminent danger of death or great bodily harm, and also that the use of force was unreasonable, and that he also had a duty to retreat or avoid the danger. He could have just driven out in his truck, which is what he did, according to his testimony. * * * The affirmative defense of self-defense does not apply in this situation. And I will not instruct them. [Trial Tr. at 260-261.]

{¶ 48} Appellant properly noted his objection to the trial court's refusal to instruct the jury on self-defense. [Trial Tr. at 261.]

{¶ 49} In his brief, appellant argues that the trial court improperly limited its analysis as to whether or not the *victim* posed a threat to him, without also considering the threat appellant faced from the crowd that had gathered in the bar parking lot. The above transcript passage, however, reveals that the trial court did, in fact, properly consider all the circumstances in determining whether appellant had a bona fide belief that he was in imminent danger of death or great bodily harm. [Trial Tr. at 260-261.] For instance, the court specifically noted that appellant was in a two-thousand pound truck, that "nobody" chased the truck, and that "[n]obody did anything" except maybe throw a beer bottle at the truck. [Trial Tr. at 261.]

{¶ 50} The trial judge had the opportunity to consider the testimony presented at trial and determined that the appellant had not provided sufficient evidence to warrant an instruction on self-defense. The transcript reveals that the court considered not only the actions of the victim, but also of the others who were involved in the events at the Valley Bar. The trial court was also afforded the opportunity to hear argument from both the prosecutor and defense counsel on the inclusion of the jury instruction. With that in mind, we cannot conclude that the trial court abused its discretion in refusing to instruct the jury on self-defense. Accordingly, appellant's fourth assignment of error is overruled.

### E. Consecutive Sentences

{¶ 51} For his fifth assignment of error, appellant claims that the trial court based its imposition of consecutive sentences solely on appellant's perceived lack of remorse, instead of balancing all the factors set forth in R.C. 2929.12.

{¶ 52} The Supreme Court of Ohio has set forth the standard of review on a trial court's imposition of a felony sentence:

> "[A]ppellate courts must apply a two-step approach when reviewing felony sentences. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 26.

{¶ 53} When determining whether the sentence is clearly and convincingly contrary to law, we must evaluate whether the trial court considered the principles and purposes of sentencing in R.C. 2929.11 and balanced the seriousness and recidivism factors under 2929.12. *Kalish* at ¶ 13. In addition, we must review whether the sentencing court was guided by the statutes that are specific to the case itself. *Id*.; *State v. Marino*, 4th Dist. No. 11CA36, 2013-Ohio-113, ¶ 7. We have also previously stated that, in analyzing whether a sentence is contrary to law, it must be within the permissible statutory range. *State v. Midlam*, 4th Dist. No. 12CA2, 2012-Ohio-6299, ¶ 6.

{¶ 54} Here, appellant does not argue that the sentences imposed were outside the statutory range. Instead, he argues that the sentencing court failed to properly consider the general guidance factors set forth in R.C. 2929.12. Contrary to appellant's assertion, the trial court's Judgment Entry of Sentence states (1) that the court considered "the purposes and principles of sentencing under R.C. §2929.11" and (2) "the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. §2929.12." [Judgment Entry of Sentence at 1.] This, however, does not end our inquiry on whether the sentence was contrary to law where the sentencing court imposes consecutive sentences, as in the case *sub judice*.

{¶ 55} As recently discussed by this court, in *State v. Marino*, *supra* at ¶ 10-11:

> R.C. 2929.41(A), the law regarding consecutive sentencing, previously stated: 'Except as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term.' However, in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-

856, 845 N.E.2d 470, the Supreme Court of Ohio declared R.C. 2929.41(A)

unconstitutional and severed it from the statute. *Id*. at paragraphs three and four

of the syllabus. The Court held that because no statute remained the 'common-

law presumptions [were] reinstated.' *State v. Bates*, 118 Ohio St.3d 174, 2008-

Ohio-1983, 887 N.E.2d 328, ¶ 18. Thus, trial courts were left with full discretion

to determine whether a prison sentence would run consecutively to any other term

of imprisonment. *Foster* at paragraph seven of the syllabus.

However, the General Assembly subsequently enacted Am.Sub.H.B. 86, which

rewrote R.C. 2929.41(A). The legislature stated: 'In amending division (E)(4) of

section 2929.14 and division (A) of section 2929.41 of the Revised Code in this

act, it is the intent of the General Assembly to simultaneously repeal and revive

the amended language in those divisions that was invalidated and severed by the

Ohio Supreme Court's decision in *State v. Foster* (2006), 109 Ohio St.3d 1. The

amended language in those divisions is subject to reenactment under the United

States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, and the

Ohio Supreme Court's decision in *State v. Hodge* (2010), . . . Ohio St.3d . . ., Slip

Opinion No. 2010-Ohio-6320 and, although constitutional under *Hodge*, *supra*,

that language is not enforceable until deliberately revived by the General

Assembly.'

{¶ 56} As a result of H.B. 86, the current general rule under R.C. 2929.41(A) is that any

sentence must be served concurrently with any other prison term or sentence of imprisonment.

H.B. 86, however, provided for exceptions to the general rule. For instance, the bill amended

division (E)(4) of R.C. 2929.14 [now division (C)(4)], which is applicable herein, and states as

follows:

> (C)(4) If multiple prison terms are imposed on an offender for convictions of
>
> multiple offenses, the court may require the offender to serve the prison terms
>
> consecutively if the court finds that the consecutive service is necessary to protect
>
> the public from future crime or to punish the offender and that consecutive
>
> sentences are not disproportionate to the seriousness of the offender's conduct and
>
> to the danger the offender poses to the public, and if the court also finds any of the
>
> following:
>
> (a) The offender committed one or more of the multiple offenses while the
>
> offender was awaiting trial or sentencing, was under a sanction imposed pursuant
>
> to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-
>
> release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more
>
> courses of conduct, and the harm caused by two or more of the multiple offenses
>
> so committed was so great or unusual that no single prison term for any of the
>
> offenses committed as part of any of the courses of conduct adequately reflects
>
> the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive
>
> sentences are necessary to protect the public from future crime by the offender.

{¶ 57}  Thus, R.C. 2929.14(C)(4), requires the sentencing court to conduct a three-step analysis

in order to impose a consecutive sentence.  *Midlam*, 4th Dist. No. 12CA2, 2012-Ohio-6299, at ¶

9.  In each step of the analysis, the sentencing court must "find" the relevant factors before imposing consecutive sentences. *Id*.; R.C. 2929.14(C)(4).

{¶ 58}  A review of the record indicates that the trial court has not made the necessary findings under R.C. 2929.14(C)(4) for imposition of consecutive sentences in its Judgment Entry of Sentence.  The Judgment Entry of Sentence, for instance, stated that "a prison sentence is necessary to protect the public from future crime by the offender" and that "a sentence of imprisonment is commensurate with the seriousness of the offender's conduct."  [Judgment Entry of Sentence at 1-2.]  The transcript of the sentencing hearing further reveals that the trial court was imposing consecutive sentences because "two offenses occurred here," and that "[t]he harm doesn't get any greater than death."  [Disposition Tr. at 8-9.]  Although the statements from the sentencing hearing could be construed as findings under R.C. 2929.14(C)(4)(b), the Judgment Entry of Sentence does not contain language which demonstrates that the trial court made the findings required by R.C. 2929.14(C)(4).  Having determined that the trial court failed to adhere to the requirements of R.C. 2929.14(C)(4), appellant's sentence ordering him to serve his Involuntary Manslaughter sentence consecutively to his Failure to Stop After a Non-Public Road Accident sentence is clearly and convincingly contrary to law.

{¶ 59}  It should be noted that by finding the appellant's sentence as clearly and convincingly contrary to law, this court is not commenting on the appropriateness or inappropriateness of the sentence.

{¶ 60}  Because this Court finds that the appellant's sentence is clearly and convincingly contrary to law, it is not necessary to address whether the trial court abused its discretion in

imposing appellant's consecutive sentence.  However, in the interests of justice, we shall address this issue.

{¶ 61}  Appellant argues that the trial court abused its discretion in imposing a consecutive sentence because it did not properly balance the guidance factors in R.C. 2929.12, but rather relied solely on the remorselessness factor.  While a sentencing court is not required to set forth, or even address, the specific 2929.12 factors it finds applicable,[5] the court in the instant case did so.  Contrary to appellant's assertion, it is clear from the record that the trial court considered multiple factors set forth in R.C. 2929.12, and adhered to the purposes and principles of sentencing set forth in R.C. 2929.11.  In addition to appellant's apparent lack of remorse, the trial court also considered appellant's lack of prior serious criminal history and seriousness of the injury suffered by the victim.  [Disposition Tr. at 8.]  Further, as noted above, the court considered the fact that two separate offenses occurred.  [Disposition Tr. at 9.]  By its own words, the trial court indicated that it considered other factors aside from remorselessness; and thus, we cannot conclude that the trial court abused its discretion in imposing the sentence.

{¶ 62} Accordingly, we find merit in appellant's assignment of error five in that the appellant's sentence is clearly and convincingly contrary to law.  We remand this matter to the trial court for resentencing in compliance with R.C. 2929.14(C).

   F.  Constitutionality of Sentence

{¶ 63} For his sixth assignment of error, appellant contends that it is unconstitutional for a sentencing court to consider whether an offender shows remorse, as set forth in R.C.

---

[5] *See Midlam* at ¶ 13 ( finding that the sentencing court merely need to consider the 2929.12 factors, and is not required to use specific language or make specific findings on the record to evince the required consideration of the factors).

2929.12(D)(5). Specifically, appellant argues that consideration of remorse "chills" a defendant's right to trial, as well as a defendant's appellate and post-conviction rights. Put another way, appellant contends that any defendant that exercises their right to trial is subject to a finding of remorselessness if convicted. Appellant asserts that this violates a defendant's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, a defendant's right to trial under the Sixth Amendment, and subjects defendants to cruel and unusual punishment under the Eighth Amendment.

{¶ 64} It is axiomatic that "a defendant is guaranteed the right to trial and should never be punished for exercising that right." *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989), paragraph two of the syllabus. However, a trial court may consider lack of remorse in sentencing a defendant, even if the defendant maintains his innocence through sentencing. *See State v. Russell*, 8th Dist. No. 88008, 2007-Ohio-2108, ¶ 23; R.C. 2929.12(D)(5) and (E)(5). In other words, while a trial court must avoid creating the appearance that it enhanced a defendant's sentence because he elected to go to trial, the trial court is free to consider the defendant's remorse, or lack thereof. *State v. Zeune*, 10th Dist. No. 10AP-1102, 2011-Ohio-5170, ¶ 25, citing *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637, ¶ 13 (4th Dist.).

{¶ 65} At defendant's sentencing hearing, the court noted the following:

> This Court also has to consider, when determining whether this is likely to occur again or whether the defendant is prone to do additional criminal activity, is his remorse. A pick-up truck did not descend from heaven and run over Bob Nibert. I heard the testimony in this case. It was clear beyond a reasonable doubt, as the Jury showed by its verdict, that you intentionally took your multi-ton truck and severed this man's leg. Then, after that happened, you made a conscious decision

to leave the scene. And according to your own testimony, you said you wanted to

come back. You got close, saw the cruisers, and then for some unknown reason

you decided to take your companion back out of Bainbridge and home. There

appears to be no remorse, not a scintilla of remorse, in your attitude. In fact, Mr.

Black, you appear to be angry about what happened to you. Well, maybe

somebody should be angry about what happened to Bob Nibert * * *.

[Disposition Tr. at 8-9.]

{¶ 66} These statements do not give rise to an inference that the trial court punished appellant

for exercising his right to trial. Rather, the statement indicates that the trial court did not believe

appellant was genuinely remorseful about his conduct, a factor that courts are permitted to

consider in sentencing a defendant. Further, the statements do not suggest that the trial court

considered the fact that appellant exercised his right to trial in evaluating the remorsefulness of

appellant. Accordingly, appellant's sixth assignment of error is overruled.

### G. Cumulative Errors

{¶ 67} For his seventh and final assignment of error, appellant asserts that cumulative errors

deprived him of a fair trial. "Before we consider whether 'cumulative errors' are present, we

must first find that the trial court committed multiple errors." *State v. Harrington*, 4th Dist. No.

05CA3038, 2006-Ohio-4388, ¶ 57, citing *Goff*, 82 Ohio St.3d at 140, 694 N.E.2d 916. Because

we have found no errors, the cumulative error principle is inapplicable. Accordingly, we

overrule appellant's seventh assignment of error.

IV

CONCLUSION

{¶ 68}  Having found no merit in appellant's first, second, third, fourth, sixth, and seventh assignments of error, we affirm the trial court's decision and judgment with respect to those issues.  However, we have found merit in appellant's fifth assignment of error with respect to the trial court's judgment entry lacking the requisite findings to comply with R.C. 2929.14(C).  For the reasons set forth above, we affirm in part and reverse in part the judgment of the trial court.  We remand the cause for proceedings consistent with this decision.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.

Harsha, J., concurring in part and dissenting in part:

{¶ 69}  I concur in judgment and opinion on assignments of error I, II, III, and VI, concur in judgment only on assignments of error IV and VII, and concur in part and dissent in part on assignment of error V.

{¶ 70}  In assignment of error IV the principle opinion uses an abuse of discretion standard of review.  However, I believe *de novo* review is the appropriate analysis to determine whether a party is entitled to a jury instruction.  *See*, *State v. Goff*, 4th Dist. No. 11CA20, 2013-Ohio-42 at ¶ 71, et seq. (Harsha, concurring in judgment only on the standard of review).  Moreover, I also conclude an instruction of self-defense would not have been proper here because Black denied having an intent to hit the victim with his truck.  Self-defense is an affirmative defense that essentially admits the facts of the state's case but raises independent facts that justify or excuse the defendant's conduct.  It does not apply to a claim of accident.  *See State v. Poole*, 33 Ohio St.2d 18, 19-20, 294 N.E.2d 888 (1973).  By raising the defense of accident the defendant denies having any intent to injure the victim.  It is a contradiction to the state's facts, not an admission to them.  *Id.*  Here, the defense counsel stated, "This is an accident(.)" in response to the court's question about the theory of the defense.  And Black himself denied trying to hit the victim.  Thus, it is not necessary to analyze the elements of self-defense because it has no possible application here.

{¶ 71}  In assignment of error V the principle opinion *sua sponte* raises the issue of the application of R.C. 2929.41 as amended by H.B. 86 and finds plain error.  However, this error was invited by the defense.  At the onset of the sentencing hearing the court inquired:  "Do counsel agree that sentencing should occur under pre-House Bill 86?"  Both the state and the defense answered affirmatively.  A defendant cannot avoid an invited error by taking advantage

of the plain error doctrine. *State v. Jennings*, 10th Dist. Nos. 09AP-70, 09AP-75, 2009-Ohio-6840, ¶ 75. In other words, invited error precludes a claim of reversible plain error. *See State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 42. Thus, I dissent.

{¶ 72} Finally, I concur in judgment only on assignment of error VII because it concludes the cumulative error doctrine does not apply because we found no error. That conclusion is inaccurate as the principal opinion found reversible error in assignment of error V. However, a single error cannot be cumulative, so I concur in judgment only.

JUDGMENT ENTRY

It is ordered that the trial court's JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, and CAUSE REMANDED for proceedings consistent with this decision. Appellant and appellee shall equally divide the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty (60) days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty (60) day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty (60) days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J.: Concurs in Judgment and Opinion.
Harsha, J.:    Concurs in Judgment and Opinion as to Assignments of Error I, II, III, and VI.
               Concurs in Judgment Only with Opinion as to Assignments of Error IV and VII.
               Concurs in Part and Dissents in Part with Opinion as to Assignment of Error V.

For the Court

By:_____
            Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.