[Cite as *State v. Hill*, 2018-Ohio-67.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 16CA3 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| CITO E.L. HILL, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 01/05/18** |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Allen M. Vender, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry M. Saunders, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Cito Hill appeals the judgment of the Athens County Court of Common Pleas convicting him of one count of aggravated trafficking in drugs and sentencing him to an eighteen-month prison term. On appeal, Appellant contends that 1) his conviction is not supported by sufficient evidence; 2) the trial court abused its discretion when it permitted the State to introduce evidence of other bad acts; 3) he received ineffective assistance of counsel because his attorney failed to object to prosecutorial misconduct

in closing argument; and 4) the trial court abused its discretion when it admitted labels affixed to prescription bottles, which were both hearsay and not authenticated. Because we fail to find merit in Appellant's second, third and fourth assignments of error, and because we have determined under Appellant's first assignment of error that his conviction was supported by sufficient evidence, we overrule all of the assignments of error raised by Appellant. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} On November 6, 2013, the Athens County Grand Jury indicted Appellant on one count of aggravated trafficking in drugs (oxycodone) in violation of R.C. 2925.03(A)(1), a third-degree felony, and one count of aggravated trafficking in drugs (oxycodone) in violation of R.C. 2925.03(A)(2), a third-degree felony. Each count carried an attendant forfeiture specification. Appellant pleaded not guilty and the matter proceeded to trial on November 19, 2015. Just prior to trial, the State dismissed count one of the indictment.

{¶3} The State presented several witnesses at trial, including Sergeant Coy Lehman of the Ohio State Highway Patrol. Sergeant Lehman testified that in the early morning hours of August 24, 2011, he received a call about a possible impaired driver traveling on Route 33 in Athens County. After

locating the car and observing it swerve multiple times, Sergeant Lehman initiated a traffic stop. He testified that he asked Appellant, who was the driver, for his license and registration. Appellant admitted that he did not have a valid driver's license but provided Sergeant Lehman with a Florida identification card and a copy of the car's rental agreement. The agreement listed Tamara Cremeans, the mother of Appellant's child, as the authorized driver and showed an estimated return date of August 8, 2011.

{¶4} Sergeant Lehman testified that Appellant stated he and his girlfriend were traveling from Florida to Columbus, and as Appellant was speaking, Sergeant Lehman noticed that his "speech was very slurred, * * * his pupils were pinpoint, which [was] odd because it was dark and they should be dilated. His eyes were red. His actions were lethargic and slow. His facial features were droopy." Sergeant Lehman testified that because he did not smell alcohol on Appellant, he suspected Appellant was under the influence of drugs.

{¶5} Sergeant Lehman testified he noticed that Appellant's girlfriend also seemed impaired. While talking with her, Sergeant Lehman observed a prescription pill bottle lying near the gas pedal. The label on the bottle indicated that the pills were "Oxycodone" and that the prescription was filled for Appellant on August 22, 2011, just two days prior to the traffic

stop.  Sergeant Lehman testified that of the 180 pills that the prescription label indicated were originally in the bottle, "significantly less than 180 pills" remained.  Sergeant Lehman testified that he then administered field sobriety tests to Appellant and that despite the fact the test results did not confirm his suspicions, he nevertheless placed Appellant under arrest for driving while under the influence of alcohol or drugs.  Subsequent urine testing confirmed the presence of cocaine and marijuana metabolites in Appellant's system.

{¶6} During the search of Appellant's person, Sergeant Lehman found a "wad of cash" totaling $1,935.00 dollars.  Sergeant Lehman testified that based on the number of missing pills and the large amount of cash, he suspected Appellant was transporting drugs.  He further testified that after additional officers arrived on the scene, a search of the car yielded two more prescription pill bottles in Appellant's name and two cell phones.  The record reveals that Appellant stated, on a recording of the traffic stop admitted a trial, that both of the cell phones in the car were his.

{¶7} The record reveals that of the 180 tablets that the label indicated were originally in the first bottle, which was found near the gas pedal in plain view, there were only 70 tablets remaining.  The label on a second prescription pill bottle, which was found in the driver's door storage

compartment, indicated that the pills were "Alprazolam" and that the prescription was filled for Appellant on August 22, 2011, as well. The label on that bottle indicated there were 84 pills, but of the 84 pills that the label indicated were originally in the bottle, there were only 37 whole and 14 broken pieces remaining. A third bottle containing oxycodone was found in the center console of the vehicle. The label on that bottle, also dated August 22, 2011, indicated there were 140 pills, but there were only 11 pills remaining.[1] It was later determined that the bottles did in fact contain oxycodone, a schedule II controlled substance, and alprazolam, a schedule IV controlled substance. Thus, out of 320 oxycodone pills prescribed to Appellant just two days prior, 239 pills were missing at the time Appellant was stopped.

{¶8} The State also presented testimony from Detective Chuck Haegele, employed by the Athens City Police Department and assigned to the Athens Major Crimes Unit. Detective Haegele, though not involved with Appellant's stop or arrest, testified generally with respect to his specific training and experience in drug interdiction. The trial court allowed the detective's testimony, over the objection of Appellant, "just for background[,]" in response to the State's asserted purpose of educating the

---

[1] Officers also found another prescription pill bottle in Appellant's girlfriend's name, which was empty, as well as a bottle of "Ultra Scent."

jury. Detective Haegele testified that he typically looks for certain drug interdiction factors or common indicators, including rental vehicles, not carrying identification, coming from other states, including Michigan, Florida and Washington, D.C., and carrying prescription pills, the most common being oxycontin or oxycodone.

{¶9} The jury ultimately found Appellant guilty of aggravated trafficking in drugs. However, it found that the State had not proved that the cash found on Appellant was derived through the commission of the offense. Appellant was subsequently sentenced to an eighteen-month prison term, an eighteen-month suspension of his operator's license, and fines totaling $6,935.00. Appellant now brings his timely appeal, assigning the following errors for our review.

## ASSIGNMENTS OF ERROR

"I.    THE TRIAL COURT VIOLATED CITO HILL'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, IT ENTERED A JUDGMENT OF CONVICTION FOR AGGRAVATED TRAFFICKING OF DRUGS.

II.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE STATE TO INTRODUCE EVIDENCE OF OTHER BAD ACTS, AND THUS DENIED CITO HILL HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

III.    CITO HILL RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY FAILED TO OBJECT TO PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT, IN VIOLATION OF MR. HILL'S RIGHTS UNDER THE FIFTH,

SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED LABELS AFFIXED TO PRESCRIPTION BOTTLES, AND THE LABELS WERE BOTH HEARSAY AND NOT AUTHENTICATED."

ASSIGNMENT OF ERROR II

{¶10} For ease of analysis, we address Appellant's assignments of error out of order. In his second assignment of error, Appellant contends that the trial court abused its discretion when it permitted the State to introduce evidence of other bad acts, thus denying him his right to due process and a fair trial. Appellant's argument under this assignment of error is twofold. First, Appellant argues the trial court erred by allowing the jury to consider urinalysis results showing that he had ingested illicit drugs. Second, Appellant argues the trial court erred in allowing evidence of "drug interdiction" factors. Appellant argues the admission of this evidence violated Evid.R. 404(B). The trial court denied Appellant's motion in limine requesting this evidence and testimony be excluded. The State argues, with respect to the admission of the urine test results, that because defense counsel failed to object to the admission of testimony by expert witness, Emily McAnulty, this issue was not properly preserved for purposes of appeal.

**{¶11}** Generally, appellate courts do not directly review in limine rulings. *State v. Hapney*, 4th Dist. Washington No. 01CA30–31, 2002–Ohio–3250, ¶ 55; citing *State v. White*, 4th Dist. Gallia No. 95CA08, 1996 WL 614190. Such rulings are tentative and interlocutory and made by a court only in anticipation of its actual ruling on evidentiary issues at trial. *See McCabe/Marra Co. v. Dover*, 100 Ohio App.3d 139, 160, 652 N.E.2d 236, 250 (8th Dist.1995); *Collins v. Storer Communications, Inc.*, 65 Ohio App.3d 443, 446, 584 N.E.2d 766 (1989). Thus, the grant or denial of a motion in limine does not preserve any error for review. *See State v. Hill*, 75 Ohio St.3d 195, 202–203, 661 N.E.2d 1068 (1996). Rather, in order to preserve the error, the evidence must be presented at trial, and a proper objection lodged. *See State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph three of the syllabus (1988); *State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142, paragraph two of the syllabus (1986). An appellate court will then review the correctness of the trial court's ruling on the objection rather than the ruling on the motion in limine. *See White, supra; Wray v. Herrell*, 4th Dist. Lawrence No. 93CA08, 1994 WL 64293.

**{¶12}** "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear

showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Green*, 184 Ohio App.3d 406, 2009–Ohio–5199, 921 N.E.2d 276, ¶ 14 (4th Dist.); citing *State v. Powell*, 177 Ohio App.3d 825, 2008–Ohio–4171, 896 N.E.2d 212, ¶ 33 (4th Dist). " 'Although the abuse of discretion standard usually affords maximum [deference] to the lower court, no court retains discretion to adopt an incorrect legal rule or to apply an appropriate rule in an inappropriate manner. Such a course of conduct would result in an abuse of discretion.' " *See 2–J Supply, Inc. v. Garrett & Parker, L.L.C.*, 4th Dist. Highland No. 13CA29, 2015-Ohio-2757, ¶ 9; quoting *Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals*, 2013-Ohio-5610, 5 N.E.3d 694, ¶ 16. When applying the abuse-of-discretion standard of review, appellate courts must not substitute their judgment for that of the trial courts. *See In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991). Furthermore, an appellate court must presume that the findings of the trial court are correct because the finder of fact is best able to observe the witnesses and to use those observations to weigh witness credibility. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984); *see also Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 19 (4th Dist.).

{¶13} Appellant argues that the evidence related to urine testing and drug interdiction factors should have been excluded under Evid.R. 404(B), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, Evid.R. 404(B) also contains exceptions, stating that evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶14} A review of the record reveals that the State sought to introduce evidence, at the end of day one of the trial, regarding Appellant's impairment on the night of the traffic stop, in part with testimony and evidence related to the field sobriety tests that were conducted. Appellant objected, arguing such testimony constituted impermissible other acts evidence. The trial court decided to adjourn the trial for the day so that further discussion could be had outside the presence of the jury, but agreed that the evidence might constitute inadmissible other acts evidence. The trial resumed the next day with the State having filed a formal motion requesting the trial court to reconsider its prior ruling on the OVI evidence. The reason advanced by the State regarding the need for the evidence related

to defense counsel's claim during both voir dire and opening statements that

Appellant was stopped for nothing other than "driving while black."

{¶15} Appellant objected to the motion to reconsider, arguing that

because he was not formally charged with Operating a Vehicle While

Intoxicated (OVI), such evidence was irrelevant and also consisted of other

bad acts evidence. After an extended bench conference at the beginning of

day two of the trial, the trial court agreed and ruled that evidence related to

Appellant's impairment, beyond his driving and the video and of the initial

stop, were not relevant, would not be admitted, and thus the court denied the

motion to reconsider.

{¶16} However, on day three of the trial, the State sought to introduce

the urine test results from the urinalysis performed on Appellant the night of

the stop, arguing that the results were admissible because Sergeant Lehman

had stated one of the factors he considers in drug trafficking investigations is

whether or not an individual is a drug user as well. The trial court held off

ruling on the issue until later in the afternoon, and when it did it decided as

follows:

> "As a preliminary matter as to the issues raised by the State, by
> the State at the last break the Court will allow the testimony of
> the State's witness tomorrow morning. Defense counsel can
> lodge any objections to her testimony at the appropriate time.
> But the court will allow the testimony."

{¶17} The next morning, on day four of the trial, Appellant filed a written motion in limine, arguing that the urine test results were inadmissible.  Appellant further asked the trial court to exclude "evidence related to drug trafficking indicators," including the urine test results. Appellant argued in his motion that the State's introduction of urine test results showing drug use, as well as testimony describing "drug trafficking indicators" such as "travelling between certain State's [sic], using rental cars, [and] using drugs * * *" is just another way of saying "that drug traffickers have certain character traits[,]" and that Evid.R. 404(B) specifically prohibits the use of other crimes, wrongs or acts to establish character or action in conformity therewith.  Appellant argued that all of the drug trafficking indicators constituted other acts, wrongs or potential crimes, which the State was using to attempt to establish that he was a drug trafficker.  The trial court denied the motion in limine, stating as follows:

> "As an initial matter counsel for the defense has submitted a written Motion in Limine excluding evidence related to the indicators as was testified to yesterday.  And as the Court has already ruled on that, having denied that motion, I don't believe we need to re-address that.  But it is good to have that down in written form for the Court of Appeals to review."

Thereafter, the State presented witness Emily McAnulty, who is employed by the Ohio State Highway Patrol, and who was stipulated to as an expert by defense counsel.  Ms. McAnulty testified that testing of Appellant's urine

revealed the presence of marijuana metabolites and cocaine metabolites. She confirmed on cross examination that Appellant's urine was not tested for the presence of opiates. Appellant did not object to McAnulty's testimony, but did object to the admission of the urinalysis report.

{¶18} With respect to Appellant's argument that the trial court erred in allowing the jury to consider urinalysis results showing that he had ingested illicit drugs, we note that we do not actually review the trial court's ruling on the motion on the limine, but rather we review the trial court's ultimate ruling based upon a later objection to the admission of the evidence. Based upon the foregoing, it is clear that Appellant, despite filing a motion in limine seeking the exclusion of testimony by McAnulty and the urinalysis report itself, did not object to McAnulty's testimony. As such, we agree with the State's argument that this issue was not properly preserved for review. Despite the fact that Appellant did object to the later admission of the actual urinalysis report, McAnulty's testimony regarding the results of the urinalysis was already admitted into evidence.

{¶19} Further, assuming arguendo the issue was preserved by the objection to the admission of the urine test results themselves, we reject Appellant's assertion that the urine tests results were not relevant or admissible in the context of a charge of drug trafficking. The record reveals

that Sergeant Lehman testified that an accused's drug use is a factor

considered when investigating drug trafficking. Additionally, in *State v.*

*Dixon*, 2016-Ohio-1491, 63 N.E.3d 591, ¶ 39 (overruled on other grounds by

*State v. Mozingo*, 2016-Ohio-8292, 73 N.E.3d 661, Dixon argued that his

trial counsel was ineffective for failing to object to the admission of

testimony pertaining to his prior drug use, including his statement that he

smokes crack. Dixon argued that his statement should have been excluded

under Evid.R. 404(B) as evidence of other crimes, wrongs or acts, which are

not admissible to prove the character of a person or to show action in

conformity therewith. *Id.* The State argued that the testimony was not

improper character testimony, but instead was admissible as a statement

against interest, and also was evidence of motive, which is admissible under

other acts. *Id.* This Court ultimately found that Dixon's statement regarding

his personal drug use "was admissible for purposes of showing knowledge

of the existence of the drugs at issue, as well as motive for his involvement

in the transportation of drugs." *Id.* at ¶ 41. Thus, we found Dixon's personal

drug use to be both relevant and admissible as an exception to Evid.R.

404(B), as it demonstrated Dixon's motive and knowledge in the context of

drug trafficking. The same reasoning applies to the facts presently before us

and leads us to conclude that the trial court did not err or abuse its discretion

in admitting the testimony of Emily McAnulty as well as the urinalysis report.  As such, we reject this portion of Appellant's second assignment of error.

{¶20} Next, with respect to Appellant's argument that the trial court erred in allowing evidence of "drug interdiction" factors, we note that Appellant cites no authority whatsoever in support of his argument.  Further, this Court has been unable to locate any authority which indicates that testimony regarding "drug interdiction" factors or common indicators of drug trafficking, constitute impermissible other acts evidence.  In fact, courts in Ohio, including this Court, routinely review and consider testimony regarding such factors given by law enforcement officers, based upon their training and experience in drug interdiction. *See State v. Dixon*, *supra*, at ¶ 18 (significance of admission of drug use better understood when considered in light of trooper testimony that based on his experience working drug interdiction, drugs travel south and money travels north); *State v. Alexander-Lindsey*, 2016-Ohio-3033, 65 N.E.3d 129, ¶ 26-27 (noting drug interdiction factors including the fact that the accused was travelling on a major drug route and noting it has been held that " '[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely * * *.' ") (internal citations omitted); *State v. Fain*, 5th

Dist. Delaware No. 06CAA120094, 2007-Ohio-4854, ¶ 13, 38 (noting that one common indicator of drug trafficking is the use of multiple cell phones and that "drug traffickers frequently do not utilize their own vehicles.").

{¶21} Here, Sergeant Lehman was permitted to define and describe drug interdiction to educate the jury. He was permitted to testify regarding common indicators of drug trafficking based upon his training and experience in drug interdiction. Likewise, Detective Chuck Haegele with the Athens City Police Department was permitted to testify regarding his training in drug interdiction and common indicators seen in drug trafficking cases. Appellant acknowledged in his motion in limine that drug interdiction factors are admissible to establish the basis for stops and seizures when evaluating Fourth Amendment issues, noting that the rules of evidence do not apply at suppression hearings. Thus, Appellant seems to argue that although such factors are relevant and admissible to justify an initial stop or search, they are not relevant or admissible in determining guilt at trial. We disagree.

{¶22} Again, Appellant cites no authority which suggests that these factors, in a totality of the circumstances analysis, cannot constitute circumstantial evidence to be considered by a jury in determining guilt. As such, we find no error or abuse of discretion in the trial court's allowance of

this testimony herein. Accordingly, having found no merit in either of the arguments raised under this assignment of error, Appellant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

{¶23} In his fourth assignment of error, Appellant contends that the trial court abused its discretion when it admitted labels affixed to prescription bottles, arguing the labels were both hearsay and not authenticated. Appellant contends, with respect to his authenticity argument, that the authentication requirement demands that there be "evidence sufficient to support a finding that the matter in question is what its proponent claims[,]" citing Evid.R. 901(A) in support. Appellant argues this requirement could not be satisfied because the State could not decide throughout trial whether the prescription labels were authentic or not, offering some witnesses who opined the prescriptions were filled at a pharmacy, but then arguing during closing arguments that the labels may have been printed by Appellant himself. Appellant further argues that the labels constituted hearsay, were offered for the truth of the matter asserted (the number of pills in each bottle), and not subject to a hearsay exception. Based upon the following, we reject Appellant's arguments.

**{¶24}** " 'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 185; quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.  We will not reverse the trial court's decision absent an abuse of discretion, which implies an unreasonable, unconscionable, or arbitrary attitude. *State v. Inman*, 4th Dist. Ross No. 13CA3374, 2014-Ohio-786, ¶ 20.  Hearsay is defined as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).  "To constitute hearsay, two elements are needed.  First, there must be an out-of-court statement.  Second, the statement must be offered to prove the truth of the matter asserted.  If either element is not present, the statement is not 'hearsay.' " *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984).  Further, "[h]earsay is generally not admissible unless it falls within one of the recognized exceptions." *State v. Agosta*, 5th Dist. Fairfield No. 11-CA-53, 2012-Ohio-3225, ¶ 33; citing Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383 (1987).

**{¶25}** In *State v. Agosta*, the court was confronted with an argument the trial court erred in admitting hearsay statements, which consisted of

testimony by an officer as to the written warnings on canisters found in a the

defendant's vehicle. *Id.* at ¶ 31. In analyzing the question before it, the

*Agosta* court looked to its previous decision in *State v. Taylor*, 5th Dist.

Ashland No. 05COA062, 05COA063, 2006-Ohio-6559, in which the

appellant therein argued that the warning label on a prescription bottle

constituted inadmissible hearsay that should not have been admitted as

evidence. The *Agosta* court noted that in *Taylor*, it had previously stated as

follows in holding that the references to the warning label did not constitute

hearsay:

> " 'The prescription bottle was marked as evidence and received
> as Exhibit 8. T. at 191. During oral argument, appellant's
> counsel attempted to move for an App.R. 9(E) correction of the
> record. Counsel argued an objection was made to the
> prescription bottle's admission, but it was omitted from the
> record. Although defense counsel objected at each mention of
> the warning label, there is no specific assignment of error on the
> prescription bottle's admission into evidence; therefore, we find
> the App.R. 9(E) request to be irrelevant.' " *Agosta* at ¶36;
> quoting *Taylor* at ¶ 12.

*Agosta* further noted the following reasoning in *Taylor*:

> " 'The prescription bottle was seized during appellant's arrest
> and qualified as relevant and admissible evidence under Evid.R.
> 401. Appellant admitted to taking Vicodin and it was in his
> possession during his arrest. T. at 76. We therefore conclude
> the references to the warning label did not constitute hearsay
> and were relevant.' " *Agosta* at ¶ 37; quoting *Taylor* at ¶ 13.

Much as in *Taylor*, *Agosta* had not assigned as error the admission of the actual canisters. As such, and based upon the reasoning of *Taylor*, the court held the canisters that were seized during the arrest were admissible evidence under Evid.R. 401 and that testimony referencing the warning label on the canister did not constitute hearsay. The same reasoning applies here as Appellant has only assigned error related to the labels, and not admission of the prescription bottles themselves, which were found in the vehicle being driven by Appellant on the night of his arrest. Thus, we conclude that the prescription bottles and affixed labels are relevant, admissible and, we believe, also authenticated, by the fact they were found in Appellant's possession when he was arrested.

{¶26} We further conclude that assuming arguendo the labels constitute hearsay, they are admissible under the business records exception to the hearsay rule. *See State v. Mitchell*, 18 Ohio App.2d 1, 9, 246 N.E.2d 586 (10th Dist.1969) (holding that "[t]he labels in question are not hearsay, but if they are so regarded, they are an exception to the hearsay rule, as provided by the uniform-business-records statute, but, still further, they are real evidence, which could well have been used as an exhibit, and admitted as evidence, supported by circumstantial probability of trustworthiness.")

{¶27} Based upon the foregoing case law and reasoning, we conclude that the prescription labels at issue did not constitute hearsay, but instead were real evidence seized during Appellant's arrest that were properly admitted as exhibits during trial. We further note that much like *Agosta* and *Taylor*, Appellant's arguments involve the admission of the labels, not the bottles themselves, which were properly admitted as exhibits. Further, even if the labels could be considered hearsay, we conclude they fall under the business records exception to the hearsay rule. *See State v. Mitchell*, *supra*. Accordingly, Appellant's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

{¶28} In his first assignment of error, Appellant contends his rights to due process and a fair trial were violated when, in the absence of sufficient evidence, the trial court entered a judgment of conviction for aggravated trafficking of drugs. The State contends Appellant's conviction is supported by sufficient evidence. We begin by considering the appropriate standard of review when confronted with a sufficiency of the evidence argument.

{¶29} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence, an

appellate court's inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Thompkins*, syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390.

{¶30} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

Here, after our review of the record we believe that the State presented sufficient evidence to support Appellant's drug trafficking conviction.

{¶31} R.C. 2925.03(A)(2) sets forth the offense of drug trafficking as charged in the indictment and states:  "No person shall knowingly do any of the following: * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."  Drug trafficking offenses involve an element of knowledge.  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶32} " '[D]irect evidence of a fact is not required.  Circumstantial evidence * * * may also be more certain, satisfying, and persuasive than direct evidence.' " *State v. Grube*, 987 N.E.2d 287, 2013–Ohio–692, ¶ 30; quoting *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990); citing *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6 (1960); citing *Rogers v. Missouri Pacific RR Co*, 352 U.S. 500, 508, 77 S.Ct. 443,

fn.17 (1957). " 'Even murder convictions and death sentences can rest solely on circumstantial evidence.' " *Grube, supra;* citing *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987); *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236, 1239 (1988); *State v. Adkins*, 4th Dist. Scioto No. 14CA3674, 2016–Ohio–7250, ¶ 15. Further, as we reasoned in *State v. Woodruff*, 4th Dist. Ross No. 07CA2972, 2008–Ohio–967, ¶ 9, "[a]bsent an admission by a defendant, the state must rely on circumstantial evidence to satisfy the reasonable cause to believe element."

{¶33} Here, Appellant's argument that the State failed to prove beyond a reasonable doubt that he knew or had reasonable cause to believe that the oxycodone in his possession was intended for sale or resale fails due to the circumstantial evidence presented by the State at trial. Specifically, based upon the record before us, we believe it was reasonable for the jury to conclude, based upon the reasonable inferences it was permitted to make, that Appellant was trafficking in oxycodone. For instance, the jury was presented with evidence that Appellant was driving a rented car that was not rented in his name, and which had an estimated return date of more than two weeks prior. The jury was also presented with evidence that in the thirty days the car had been rented, it had been driven nearly 10,000 miles. The

jury was informed that Appellant did not have a valid driver's license, but that he produced an identification card from the State of Florida.

{¶34} Further, evidence was also presented to the jury indicating three prescription pill bottles were found in the vehicle Appellant was driving, all in Appellant's name and filled just two days prior from a pharmacy in Florida. The jury heard testimony from Sergeant Lehman that of 320 oxycodone pills collectively prescribed to Appellant according to the prescription labels, only 81 pills remained after just being filled just two days prior. Thus, 239 oxycodone pills were missing. Additionally, with regard to the third prescription, which was for Alprazolam, the jury heard testimony that of the 84 pills prescribed just two days prior, only 37 whole pills and 14 broken pills remained. The jury was presented with evidence that in addition to the number of pills missing from the prescription bottles found, law enforcement also found two cells phones in the vehicle and a large sum of cash on Appellant's person.

{¶35} Moreover, the jury listened to testimony by Sergeant Lehman that in his experience as a law enforcement officer and his work involving drug interdiction, it is common to see drugs coming into the State of Ohio from Florida, especially in vehicles rented in another person's name. Sergeant Lehman also testified regarding certain other drug interdiction

factors that indicate drug trafficking, including having multiple cell phones and carrying large quantities of cash. He also testified that having broken pills is a drug interdiction factor indicative of drug trafficking.

{¶36} We find, based on the evidence it had before it, that the jury could have reasonably inferred that Appellant was engaging in drug trafficking. Based upon the above evidence, the jury could reasonably infer that the reason Appellant only had 81 oxycodone pills remaining from a total of 320 prescribed just two days prior, was because he was trafficking in drugs. *See Westlake v. Wilson*, 8th Dist. Cuyahoga No. 96948, 2012-Ohio-2192, ¶ 38; citing *State v. Byers*, 8th Dist. Cuyahoga No. 94922, 2011-Ohio-342, ¶ 9 ("Although this court has recognized that having a cell phone is ubiquitous and therefore possession of one cell phone is not ipso facto proof that it was used in drug trafficking, the same cannot be said about having two cell phones."); *State v. Young*, 8th Dist. Cuyahoga No. 92744, 2010-Ohio-3402, ¶ 19 ("We have held in several cases that police officers may testify to the nature and amount of drugs and its significance in drug trafficking."); *State v. Nelson*, 8th Dist. Cuyahoga No. 100439, 2014-Ohio-2189, ¶ 20 (using a rental car is significant indicia of drug trafficking because traffickers know that their own personal vehicles will be seized and the rental cars are more difficult to identify during police surveillance); *State*

*v. Young*, 8th Dist. Cuyahoga No. 92744, 2010-Ohio-3402, ¶¶ 15-19 (the fact that no drug paraphernalia was found on appellant as well as the quantity of crack recovered undercut argument the drugs were for personal use).

{¶37} Here, evidence before the jury consisted of a finding of a large quantity of missing drugs, multiple cell phones, a large quantity of cash, and a rental car not in the driver's name that was overdue for return with a very large number of miles on it, being driven from Florida to Ohio. Although the amount of drugs recovered are not necessarily indicative of drug trafficking, it is the amount of drugs missing from the prescription bottles which gives rise to a reasonable inference that the drugs were being trafficked, especially in light of the fact that the labels indicate the prescriptions were filled just two days prior. Common sense dictates that even if Appellant was using the drugs, he could not have possibly used the number of pills that were unaccounted for in a two day time span and still be living. Further, even though no charges were made with respect to the prescription for Alprazolam, the fact that several of those pills were also missing, along with the presence of several broken pills, is pertinent to a totality of the circumstances analysis. We conclude, based upon the

evidence before it and the totality of the circumstances, the inferences made and conclusions reached by the jury are supported by the record.

{¶38} Consequently, we find that the State presented sufficient evidence that, if believed, established that Appellant trafficked in oxycodone by transporting a controlled substance when he knew or had reasonable cause to believe that the controlled substance was intended for sale or resale by the offender or another person. Accordingly, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR III

{¶39} In his third assignment of error, Appellant contends that he received ineffective assistance of counsel because his attorney failed to object to prosecutorial misconduct in closing argument, thus denying him his constitutional rights under the Fifth, Sixth and Fourteenth Amendments. We initially note that failure to object to an alleged error waives all but plain error. *State v. Keeley*, 4th Dist. Washington No. 11CA5, 2012–Ohio–3564, ¶ 28. Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010–Ohio–3286, 934 N.E.2d 920, ¶ 6; *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. To find plain error, the outcome of

trial must clearly have been otherwise. *State v. McCausland*, 124 Ohio St.3d 8, 2009–Ohio–5933, 918 N.E.2d 507, ¶ 15; *State v. Braden*, 98 Ohio St.3d 354, 2003–Ohio–1325, 785 N.E.2d 439, ¶ 50.

{¶40} "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Purdin*, 4th Dist. Adams No. 12CA944, 2013–Ohio–22, ¶ 31; quoting *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009–Ohio–6191, ¶ 36; citing *State v. Smith*, 97 Ohio St.3d 367, 2002–Ohio–6659, 780 N.E.2d 221, ¶ 45, in turn citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.' " *Purdin* at ¶ 31; quoting *State v. Givens*, 4th Dist. Washington No. 07CA19, 2008–Ohio–1202, ¶ 28; quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995). *Accord State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). "Prosecutorial misconduct constitutes reversible error only in rare instances." *Purdin*, *supra*; quoting *State v. Edgington*, 4th Dist. Ross No. 05CA2866, 2006–Ohio–3712, ¶ 18; citing *State v. Keenan*, 66 Ohio St.3d 402, 406, 613 N.E.2d 203 (1993). The "touchstone analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not

guarantee an 'error free, perfect trial.' " *Purdin* at ¶ 31; quoting *Leonard* at ¶ 36; quoting *Gest* at 257.

{¶41} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441 (1970); *State v. Stout*, 4th Dist. Gallia No. 07CA5, 2008–Ohio–1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95 (citations omitted). "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–448, 721 N.E.2d 52,

(stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶42} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.  Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*  "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).  Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶43} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373

(1989), paragraph three of the syllabus.  Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated. *See State v. Clark*, 4th Dist. Pike No. 02CA684, 2003–Ohio–1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592, 2002–Ohio–1597; *State v. Kuntz*, 4th Dist. Ross No. 1691, 1992 WL 42774.

{¶44} Here, Appellant claims that although trial counsel consistently objected throughout the trial when the State tried to offer evidence of Appellant's possible driving while using illicit drugs, trial counsel did not object when the State was arguing other acts as substantive evidence of guilt in closing argument.  Trial counsel's failure to object to alleged instances of prosecutorial misconduct "does not necessarily constitute ineffective assistance" of counsel. *State v. Topping*, 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 80; citing *State v. Perez*, 124 Ohio St.3d 122, 2009–Ohio–6179, 920 N.E.2d 104, ¶ 230; *State v. Tenace*, 109 Ohio St.3d 255, 2006–Ohio–2417, 847 N.E.2d 386, ¶ 62.  That is, a failure to object does not necessarily fall below an objective standard of reasonableness. *Topping, supra*.  Instead, a failure to object to alleged instances of prosecutorial misconduct may be considered sound trial strategy. *Id*; *State v. Brown*, 5th Dist. Stark No. 2007CA15, 2008–Ohio–3118, ¶ 58 (stating that failure to

object to prosecutor's statements during closing arguments may have been trial strategy and thus did not constitute deficient performance).

{¶45} " 'A competent trial attorney might well eschew objecting * * * in order to minimize jury attention to the damaging material.' " *Topping, supra;* quoting *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 90; quoting *United States v. Payne*, 741 F.2d 887, 891 (C.A.7 1984). *Accord State v. Franklin*, 97 Ohio St.3d 1, 2002–Ohio–5304, 776 N.E.2d 26, ¶ 42 (stating that "[a] reasonable attorney may decide not to interrupt his adversary's argument as a matter of strategy"); *State v. Clay*, 7th Dist. Mahoning No. 08MA2, 2009–Ohio–1204, ¶ 141 (stating that "[l]imiting objection during closing is a trial tactic to avoid trying to draw attention to the statements."). Thus, in order to establish that trial counsel performed deficiently by failing to object to error at trial, the defendant ordinarily must demonstrate that the error "is so compelling that competent counsel would have been obligated to object to [it] at trial." *Topping, supra;* quoting *State v. Hale*, 119 Ohio St.3d 118, 2008–Ohio–3426, 892 N.E.2d 864, ¶ 233.

{¶46} The Supreme Court of Ohio has recognized that if counsel decides, for strategic reasons, not to pursue every possible trial strategy, the defendant is not denied effective assistance of counsel. *State v. Black*, 4th

Dist. Ross No. 12CA3327, 2013–Ohio–2105, ¶ 40; *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). "Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *Leonard, supra,* at ¶ 68; quoting *State v. Cromartie*, 9th Dist. Medina No. 06CA0107–M, 2008–Ohio–273, ¶ 25. An appellate court reviewing an ineffective assistance of counsel claim "must refrain from second-guessing the strategic decisions of trial counsel." *Black, supra;* quoting *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶47} In this case, we have already determined that the trial court did not err or abuse its discretion in admitting testimony and evidence indicating Appellant's urine tests results revealed he had taken illicit drugs on the night of his traffic stop and arrest. Thus, it cannot be said that the prosecutor's statements were improper or constituted prosecutorial misconduct in light of this ruling. Nor can it be argued defense counsel was ineffective for failing to object in light of the trial court's prior ruling. In light of the prior ruling, defense counsel could have reasonably determined it was a better strategy not to continue to draw attention to the evidence by continuing to lodge objections. Further, we are mindful that both the prosecution and the defense have wide latitude during opening and closing arguments. *State v. Waters*, 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109, ¶ 33; citing

*Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CACO30025, 2012-Ohio-

3699, ¶ 30. Even if it was not sound strategy for defense counsel not to

object to the complained of statement, we rely on the instructions given to

the jury, which inform the jury that statements of counsel are not to be

considered as evidence. For instance, the jury was instructed that "[t]he

evidence does not include * * * the opening or closing arguments of

counsel." Further, the jury was instructed that "[t]he evidence does not

include the indictment or the opening statements or closing arguments of

counsel. The opening statements and closing arguments of counsel are

designed to assist you. They are not evidence." " 'A presumption always

exists that the jury has followed the instructions given to it by the trial

court.' " *State v. Murphy*, 4th Dist. Scioto No. 09CA3311, 2010–Ohio–5031,

¶ 81; quoting *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990),

paragraph four of the syllabus.

{¶48} As such, based upon a review of the record and considering the

complained of statements within the context of the entire trial, we cannot say

the Appellant would not have been convicted in the absence of the

statements. Further, we have already noted that Appellant's conviction was

based upon sufficient evidence. Based on the trial court's instructions, as

well as the other evidence in the record which sufficiently supports

Appellant's conviction, we cannot say that the prosecutors' statements made during closing argument, which were not objected to by defense counsel, changed the outcome of the trial.  Nor can we conclude that but for counsel's errors, the result of the trial would have been different.  Accordingly, we cannot conclude Appellant's trial counsel was ineffective. Thus, we find no merit to Appellant's third assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Hoover, J., dissenting:

**{¶ 49}** I respectfully dissent from the majority opinion because I believe that Appellant's conviction is supported by insufficient evidence.

**{¶ 50}** Appellant was charged with drug trafficking under R.C. 2925.03(A)(2). This section of the drug trafficking statute requires some evidence that the offender actually prepares a drug for shipment, or ships a drug, or transports a drug, or delivers a drug, or prepares for distribution a drug, or actually distributes a controlled substance, *when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.* (Emphasis added.) *Compare* R.C. 2925.03(A)(2) *with* 2925.03(A)(1) ("No person shall knowingly * * *[s]ell or offer to sell a controlled substance or a controlled substance analog.").

**{¶ 51}** "An element of an offense may be established by either circumstantial or direct evidence or both." *State v. Lowe*, 86 Ohio App.3d 749, 753, 621 N.E.2d 1244 (4th Dist.1993). "In general, circumstantial evidence and direct evidence possess the same probative value." *State v. Husted*, 4th Dist. Ross No. 14CA3447, 2014-Ohio-4978, ¶ 15, citing *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶ 52} "Circumstantial evidence has been defined as testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Payne,* 11th Dist. Ashtabula No. 2014–A–0001, 2014–Ohio–4304, ¶ 22, citing *State v. Nicely,* 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988). " 'An 'inference' is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.' " *State v. Nevius,* 147 Ohio St. 263, 274, 71 N.E.2d 258 (1947), quoting *Ensel v. Lumber Ins. Co. of New York*, 88 Ohio St. 269, 102 N.E. 955 (1913), paragraph thirteen of the syllabus.

{¶ 53} "A trier of fact may not draw '[a]n inference based * * * entirely upon another inference, unsupported by *any additional fact* or another inference from other facts[.]' " *State v. Cowans*, 87 Ohio St.3d 68, 78, 717 N.E.2d 298 (1999), quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820 (1955), paragraph one of the syllabus. "When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper." *Armstrong,* 2014-Ohio-4304, at ¶ 23, citing *State v.*

*Maynard,* 10th Dist. Franklin No. 11AP–697, 2012–Ohio–2946, ¶ 27. "The rule against inference-stacking essentially forbids the drawing of an inference from evidence, which is too uncertain or speculative or which raises merely a possibility or conjecture. While reasonable inferences may be drawn from the facts and conditions established, they cannot be drawn from facts or conditions merely assumed." *Armstrong* at ¶ 23. *See generally Ray v. Wal-Mart Stores, Inc.*, 4th Dist. Washington No. 12CA21, 2013-Ohio-2684, ¶ 35 (discussing improper inference stacking).

{¶ 54} The evidence presented at trial was that Appellant possessed three, prescription-pill bottles containing significantly fewer pills than the labels suggested they should. All three labels stated that the prescriptions had been filled for Appellant at pharmacies in Florida roughly 48 hours before the traffic stop. The first bottle contained only 70 of 180 oxycodone pills; the second bottle contained only about 37 of 84 alprazolam pills; and the third bottle contained only 11 of 140 oxycodone pills. Appellant also had more than one cell phone and nearly two thousand dollars in cash in his pocket.

{¶ 55} There were also several things about Appellant's situation that were consistent with someone trafficking in drugs. For example, Florida is a known source of oxycodone; and traffickers often transport drugs in rental

cars. Records also confirmed that the car Appellant was driving had been driven nearly ten thousand miles since being rented on August 1, 2011.

{¶ 56} However, the State presented no evidence at trial from which a jury could find beyond a reasonable doubt that Appellant transported his remaining oxycodone pills *when he knew or had reasonable cause to believe that the drug was intended for sale or resale.* For example, the State presented no evidence that the remaining pills were cut for sale, that Appellant possessed items to package the pills for sale (e.g., plastic baggies) or that Appellant's phones contained text messages about future sales.

{¶ 57} Furthermore, the State did not present any evidence at trial that Appellant sold his missing oxycodone pills. For example, no testimony is in the record that officers made a controlled buy from Appellant or that Appellant's cell phones contained text messages about past sales.

{¶ 58} The jury necessarily must have based an inference upon another inferential assumption in order to find beyond a reasonable doubt that Hill knew the oxycodone was intended for sale or resale. Specifically, the jury had to have inferred that Hill had been selling oxycodone based on the number of missing pills in the bottles and then inferred that he intended to sell his remaining oxycodone pills. Because no evidence exists in the record from which a jury could infer that Appellant sold his missing pills,

this inference "was dependent *not* upon an established fact, but upon another inferential assumption" and is therefore improper. (Emphasis sic.) *Armstrong*, 2016-Ohio 7841, at ¶ 28.

{¶ 59} "Normally, convictions are based on specific facts that support or establish the elements of a crime charged. While it is certainly acceptable to infer certain facts or circumstances from the evidence at hand, inferences that establish criminal elements based on other inferences not established in fact thwart how criminal liability should be established in our system of justice." *State v. Collins*, 8th Dist. Cuyahoga No. 95422, 2011-Ohio-4808, ¶ 25.

{¶ 60} Accordingly, I would sustain Appellant's first assignment of error and reverse the judgment of the trial court.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Hoover, J.:  Dissents with Dissenting Opinion.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**